STATE OF NEBRASKA, APPELLEE, v. JOHN F. ADEN, APPELLANT.
241 N. W. 2d 669

Filed May 12, 1976. No. 40367.

Kirk E. Naylor, Jr., of Naylor & Keefe, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

CLINTON, J.

The defendant, John F. Aden, was charged with the possession of a controlled substance, to wit, marijuana, with intent to deliver. The defendant pled not guilty, waived a trial by jury, and submitted to a trial before the District Judge upon a stipulation as to what the State's testimony would be if witnesses were called. The stipulation preserved objection to the competency of the testimony. The foundation for the objection was that the evidence was obtained as a result of an unlawful arrest and search and seizure of the defendant and his motor vehicle in violation of the Fourth Amendment to the Constitution of the United States and Article I, section 7, of the Nebraska Constitution. The stipulation also provided that in ruling at trial upon the objection to the evidence offered by the State, the court could consider the record of the testimony at an earlier hearing on a motion to suppress made upon the same and other grounds.

The defendant was found guilty and fined the sum of $500. He now appeals to this court and the sole issue

before us whether the objection should have been sustained because the evidence admitted was seized in violation of the defendant's constitutional right to be "secure" in his person "and effects against unreasonable searches and seizures," and must therefore be suppressed under the exclusionary rule of Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A. L. R. 2d 933; and Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726. We reverse and remand.

The stipulation was to the effect that if the State produced witnesses they would testify as follows: That on March 4, 1974, Lancaster County deputy sheriff Harry Stewart stopped, without search or arrest warrant, a blue 1974 pickup with camper shell at a certain location on a public highway in rural Lancaster County; that the defendant Aden was the driver of the vehicle and was the registered owner thereof; that after stopping the vehicle the officer, without warrant, forcibly entered the locked camper shell and found, among other items not relevant or material, "several brown paper grocery bags"; that within two of these bags were found a total of six individually wrapped packages of vegetable material; and that if a certain state chemist were called he would testify that he was a qualified chemist for the State of Nebraska, that he had analyzed samples of the vegetable material previously mentioned, that in his opinion the material was Cannabis Sativa L, and that it weighed approximately 12 pounds. The remainder of the stipulation we set forth verbatim: "IT IS FURTHER STIPULATED that for purposes of the trial of this matter, defendant objects to the introduction of any evidence or testimony on behalf of plaintiff which relates to information obtained or evidence seized pursuant to the stopping of said 1974 Ford pickup on March 4, 1974, and renews his motion to suppress the same as evidence for the alleged reasons that both the seizure of said vehicle and its occupants, and the subsequent search of said vehicle and seizure of evidence

was made without probable cause and therefore violated defendant's right to be free from unreasonable searches and seizures of as guaranteed to him by the Fourth Amendment to the Constitution of the United States of America.

"FURTHER, it is stipulated that the transcript of the suppression hearings together with the exhibits received at said hearings held in this cause on the 8th day of January, 1975, and the 5th day of February, 1975, now a part of the record in this cause, may be considered by the Court in ruling upon the foregoing objection and motion made by defendant."

Under this state of the record the sole question before us is whether the record establishes that there was probable cause to justify the search and seizure without warrant. We first state the applicable rules of law. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595; State v. Dussault, 193 Neb. 122, 225 N. W. 2d 558; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. It is not only the personal knowledge of the officer who makes the search and seizure which may be used to test probable cause, but added thereto may be the collective knowledge of the law enforcement agency for which the officer acts. However, in that case there must have been some communication of knowledge to or direction to act from the department or officer having that knowledge to the officer making the search and seizure. United States v. Wixom, 460 F. 2d 206; United States v. Canieso, 470 F. 2d 1224; United States v. Nieto, 510 F. 2d 1118; United States v. Del Porte, 357 F. Supp. 969, affirmed 483 F. 2d 1399.

At the suppression hearing the State introduced no evidence. The defendant called two witnesses, a passen-

ger in the pickup at the time it was detained by the police and an officer involved in the subsequent search and seizure.

The passenger witness testified as follows: That he, Aden, and another companion were driving to the rural home of a friend, one Douglas Torrence; that as they approached the residence of the friend on a public road they noted several sheriff's department vehicles in the farmyard. Seeing this they slowed down and continued on at slow speed, about 20 miles per hour. They encountered another sheriff's vehicle which put a spotlight on the pickup. Aden then stopped his pickup. In a short time a person (apparently deputy Stewart) and at least one other officer approached the pickup. They asked the defendant and his companions for identification. This they furnished. They were also told to empty their pockets and place the contents on the truck. This they did. The identifications were in order and no contraband was found. They were not at that time formally told that they were under arrest, but they were told they could not leave. About 20 minutes later one of the officers forced open the rear door of the locked camper shell. No consent for the entry was given by the defendant or his companions. The officer had first asked for a key to the camper. The defendant told him that he had no key. Before making entry the officer looked into the camper with the aid of a flashlight. After the officer forced open the camper and made some examination of material therein, the occupants of the car, including the defendant, were told they were under arrest. The witness testified that he had no knowledge of marijuana being in the camper.

Deputy Cox testified that he and deputy Stewart were in charge of the police operation at the Torrence farm. His testimony generally confirmed that of the previous witness. In addition he stated that after the pickup was stopped, the officers checked, apparently by radio, to see if there were any arrest warrants for the occupants of

the truck and they determined that there were none. Neither he nor any of the other officers knew the defendant or his companions nor had any information about them. He stated that the occupants were patted down and nothing was found. He did not know whether the cab of the truck had been searched. Deputy Cox further testified that he was not one of the officers who made the initial stop of the vehicle. Twenty minutes elapsed before the occupants of the pickup truck were placed under arrest. As to grounds for the search he testified: "Well, the circumstances of the parties arriving at this location that we were conducting a search warrant on; the information that we prior had that there was involved in this same series of transactions, drug transactions, with the occupants of the residence involved a pickup truck from Omaha; the fact that there was a large dog in the back of this truck, and the Defendant and the other occupants claimed that they had no way of getting the dog out, and when we inquired about how they were going to let the dog out to relieve himself, they said they just planned on letting him wait until they got back to Omaha; the fact that we could see in the back of the truck under the camper shell grocery sacks that contained or appeared to contain rectangular objects; and just the general demeanor of the subjects." Deputy Cox also stated that he was the officer who, prior to breaking into the truck, wiped some of the dirt from the window of the camper after which he looked in with a flashlight and observed the contents of the camper. Those included sleeping bags, a large dog, camping equipment, and two or three brown paper sacks. Near the top of one of the sacks he saw a very small portion of some plastic or opaque material. He thought he could detect through the sides of the sack a rectangular shape and with reference thereto he later said: "There is nothing distinctive about it that would make it necessarily a brick of marijuana more than anything else." He further stated that in

his experience vans and campers, more than other vehicles, are used to transport controlled substances.

In support of its claim that the evidence shows probable cause for the search, the State relies upon Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889; Carroll v. United States, *supra*; and State v. Romonto, 190 Neb. 825, 212 N. W. 2d 641. None of the cited authorities support the State's position and we can find none that do. Terry v. Ohio, *supra*, authorizes a limited search in the form of a patdown to determine whether a person whose actions are suspect is armed. This limited search is for the purpose of the officer's protection in a "stop and frisk" situation. In such a case when arms are found, then, of course, an arrest is warranted. That case goes no further. When, in the case now before us, the officers completed their patdown, they had no more information than that with which they had started, namely, a mere suspicion. Carroll v. United States, *supra*, was the first case in which the United States Supreme Court had occasion to consider the search of a motor vehicle. It held that, because of the mobility of a motor vehicle, no warrant was required if the officers had probable cause to search. The court said: "It would be intolerable and unreasonable if a[n] . . . agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. . . . The meas-

ure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband . . . therein which is being illegally transported." In Carroll, the officers knew or had convincing evidence that the Carroll brothers, suspected of transporting illegal liquor, were bootleggers and were plying that trade in Grand Rapids, Michigan. They also had information indicating that the source of the illegal liquor supply was in Detroit which was 152 miles from Grand Rapids. The officers also knew that the car in question (the year was prior to 1923) was traveling from Detroit to Grand Rapids and, as stated in the opinion of the court: "The partners in the original combination to sell liquor in Grand Rapids were together in the same automobile they had been in the night when they tried to furnish the whisky to the officers which was thus identified as part of the firm equipment." The court held there was probable cause.

State v. Romonto, *supra,* was a "plain sight" doctrine case. The auto in that case was stopped for driver's license and registration check and because one of the license plates was not visible. During this check the officer saw on the front seat of the car a brown ball which from experience he believed to be "temple ball hashish." The officer then requested and, received permission to examine and search a jacket which was on the seat of the car. He found therein two odd pipes which had been used for smoking marijuana. There was also a strong odor of marijuana in the car. We held there was probable cause.

What does the record here show as to claimed facts and circumstances within the officers' knowledge or of which they had reasonable trustworthy information which would justify a man of reasonable caution in the belief that an offense had been or was being committed?

The first claimed circumstance was the arrival of the pickup truck in the proximity of the location at which

the officers were conducting a search. The record is devoid of any information as to what, if anything, the officers found in their search of the Torrence residence for which they had a warrant; there is nothing in the record, as for example the affidavit on which the warrant was issued, to show probable cause for that particular search; and there is nothing whatever to show that there were any illegal controlled substance activities being carried on at the premises. A couple of illustrations may make our point. If a person seeks entry at a bootlegging establishment, it is, no doubt, some ground for believing he may be there to patronize the bootlegger, or perhaps to make a wholesale delivery. If a person seeks entry to a house of prostitution, it may be reasonable to infer that, depending upon sex, the person is either a patron or an inmate. However, before such inferences have any foundation, it first must be shown by some evidence what the nature of the establishment is. In the record here there is no factual information whatever to show that any illegal activities, drug or otherwise, were being carried on at the farmstead and that the officers had knowledge thereof. Presumably the State introduced no such information because it had none.

The next matter for consideration in determining whether there was probable cause to stop and search the pickup is the statement by deputy Cox to the effect he had information that a pickup truck from Omaha was involved in some unspecified drug operations. No source, reliable or otherwise, is given for this claim of knowledge. The next item is the fact that Aden stated he had no key to the camper and that the dog would have to stay in the camper until they returned to Omaha. What these facts show is at most a refusal to permit a search. If a refusal, for whatever reason, to permit search constitutes reasonable ground for search, then it is plain enough that we write off the Fourth Amendment to the Constitution of the United States and the

comparable provisions of our own Consitution. Next, even if we assume that wiping the camper window and looking in the camper with the use of a flashlight and seeing grocery sacks with some ill-defined rectangular shape therein comes within the perview of the plain view doctrine, we still have no fact which supports a warrantless search. The officer himself said about the shape: "There is nothing distinctive about it that would make it necessarily a brick of marijuana more than anything else." The same may be said for the fact that he saw some brown plastic near the top of the sack.

Next is the claim of the officer that vans and campers are used more than other vehicles for transportation of controlled substances. This may be true, but it is also true that there are tens of thousands of such vehicles that are not used for such purposes. We can hardly say that each and every camper van may be searched. There is no way we can remove the owners and operators of all such vehicles from the protection of the Fourth Amendment. The nature of the vehicle alone surely is not enough, if, in fact, it is at all significant.

The record of information known to the officers in this case does not meet the probable cause requirements of the Constitutions of the United States and of this state. The evidence should have been suppressed.

REVERSED AND REMANDED.