STATE OF NEBRASKA, APPELLEE, V. ROBERT M. SOTELO, APPELLANT.

248 N. W. 2d 767

Filed January 5, 1977. No. 40796.

C. Kenneth Spady and John O. Sennett of McGinley, Lane, Mueller, Shanahan, McQuillan & Gale, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant was sentenced to a term of 1 to 4 years in the Nebraska Penal and Correctional Complex following a jury verdict of possession of marijuana with intent to distribute, deliver, or dispense. He alleges three assignments of error: (1) The trial court erred in overruling his motion to suppress evidence. (2) The trial court erred in failing to instruct the jury on lesser included offenses. (3) The trial court erred in finding the evidence sufficient to establish the necessary elements of possession. We affirm.

In the early morning hours of August 4, 1974, officer Hollis Compton of the Nebraska State Patrol stopped a camper eastbound on Interstate 80 near Ogallala Nebraska, for passing a car without the use of a turn signal. Before he left the patrol car, he observed the defendant making some moves in the vehicle. Defendant leaned forward in his seat and then clear to the right with his hand stretched out. Compton then started for the driver's window, but noticed that the driver was not in his seat, and went to the door on the right side of the vehicle. He knocked on the door and the defendant came out of the vehicle and closed the door behind him.

After the officer examined the driver's license of de-

fendant, he requested the vehicle registration papers, which defendant obtained after asking another occupant where they were. While the defendant was procuring these papers, the officer was standing on the pavement outside the car but positioned so he could see the interior. The door of the vehicle could not be closed because his body was between the car and the door. Defendant produced rental papers showing the vehicle had been rented by one of the two other occupants, Dennis Diaz. It showed Casa Sotelo as his employer. Pamela Critelli, a friend of Diaz, was the other occupant.

From his position outside the car, the officer noticed a strong odor of what he believed to be marijuana. He also heard a great deal of fan noise. When defendant produced the rental papers and handed them to the officer, defendant was inside the vehicle. Officer Compton flashed his light on the floor of the vehicle and observed what he believed to be marijuana seeds. He picked up one of them and asked whether there was any marijuana in the vehicle. Both defendant and Diaz said no.

Officer Compton testified he then asked if he could look in the vehicle. The defendant asked him where he wanted to look, and Compton told them he wanted to look in the front of the vehicle. Defendant and Diaz said okay. Both defendant and Diaz deny they gave permission to search the camper.

A search of the cab revealed a plastic bag directly in front of the driver's seat which the officer believed contained marijuana. He also found several pills in the glove compartment. He believed them to be amphetamines. He then placed the occupants under arrest.

Critelli was then observed throwing something out of the vehicle. The officer had it retrieved, and discovered it was a corncob pipe. After he arrested the parties, the officer discovered marijuana seeds on the pavement where they were standing. Compton then went to the rear of the vehicle and looked through some of

the cupboards. He found several brick-shaped packages. Other packages enclosed in large plastic bags were found in the shower. The vehicle was carrying in excess of 1,000 pounds of marijuana.

Defendant testified he had been living in Tucson, Arizona, in the summer of 1974. He met Dennis Diaz on two occasions as Diaz was a roommate of his brother. Diaz called, asking defendant to meet him at the Tucson airport. Defendant picked up Diaz at the airport, and took him to the rental agency where Diaz rented the Winnebago camper. Defendant had previously mentioned going to Michigan. Diaz asked defendant whether he still wanted to go to Michigan. Defendant accepted the ride and went home to pack. He taped a sign to his suitcase saying "Michigan" in case he had to hitchhike any distance to his destination.

Defendant further testified Diaz picked him up at his house about 4 or 5 hours after leaving the rental agency. Defendant paid some of the expenses for gasoline on the trip, and did some of the driving. He testified he never opened any of the cupboards or the shower stall where the marijuana was discovered. He testified also the airconditioner and the exhaust fans were running the whole trip and he did not notice the odor of marijuana. When defendant was arrested he told the officer that he had been hitchhiking and that Diaz had picked him up in Flagstaff. The "Michigan" sign was found taped to his suitcase.

Diaz offered a different version of how they came to be traveling together. He testified he received a phone call in California from an unidentified caller asking if he wanted to do some work driving. He was told to be in Tucson as soon as possible. Diaz had previously done some driving for defendant's sister, transporting pottery from Arizona to California. Diaz flew to Tucson where he called the number he had been given. Someone told him to go to a shopping center where he would be met. He was not told who would meet him. Defendant

picked Diaz up at the shopping center and drove him to the rental agency. Defendant told Diaz they were going to Chicago and Diaz was to rent the Winnebago. Defendant gave him the money for renting the camper.

After renting the camper, Diaz drove it back to the shopping center and defendant drove his own vehicle there. They separated for about an hour and a half, and Diaz ate lunch in the shopping center. He walked back to the parking lot and defendant was waiting for him. They started on their trip at that time. Diaz became aware of the marijuana in the vehicle after they had been traveling for a couple of hours. The only conversation between Diaz and defendant about the marijuana took place in Colorado when Diaz asked him how much it was worth.

Pamela Critelli joined Diaz and defendant in Colorado Springs. She was a friend of Diaz and had flown to Colorado Springs after Diaz called her and asked her to meet him there. She did not testify at the trial. Diaz and Critelli were allowed to plead guilty to a misdemeanor offense of possession of marijuana weighing less than a pound. Diaz testified for the State.

Before considering the defendant's assignments, we note that the State contends defendant's motion for a new trial was not timely. The motion was filed on the 11th day after the verdict. However, the 10th day was a Sunday. We have repeatedly held that when the 10th day for filing a motion for a new trial is a Sunday or a holiday, filing on the next business day is within time.

Defendant's first assignment of error is that the trial court erred in failing to suppress the evidence found in the search of the camper. While defendant denies a law violation, he does concede the officer, having observed one, had a right to stop the vehicle to obtain identification of the driver and determine the ownership of the vehicle. Defendant's contention is that the officer did not have a right to stand in a position so that the door of the van could not be closed when the driver

retrieved evidence of ownership of the van. Defendant concedes the officer's initial position outside the van was proper. The thrust of the defendant's argument is that when officer Compton's body blocked the closing of the door of the camper the officer was actually conducting a search. His entire argument is premised on the supposition that this was the point at which the search began.

Essentially, it is defendant's contention that the officer did not have a right to be where he could look into the camper and he could not have done so if his body had not been positioned so as to block the closing of the door. The question is not whether the state trooper had probable cause to begin a search at that point in time; rather, it is whether his position was reasonable under the circumstances. We determine that it was.

We find officer Compton had a lawful right to be standing where he was when he detected the strong odor of marijuana and saw the marijuana seeds. The officer's action was entirely reasonable. He positioned himself so that he could see what was transpiring in the vehicle, particularly what the defendant might be obtaining from the glove compartment or from the automobile. It is proper and often necessary that an officer keep the subject in view in such circumstances. As Mr. Justice Rehnquist observed in footnote 5 in United States v. Robinson, 414 U. S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973): "One study concludes that approximately 30% of the shootings of police officers occur when an officer stops a person in an automobile." See, also, Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

We determine the disputed position of the officer was not a search or seizure within the scope of the Fourth Amendment even though his position brought evidence of illegal activity within the range of his senses. The search did not begin until the officer actually entered

the vehicle which the State's evidence indicates was with consent. It is true, the issue of consent was disputed. On the record, however, it became a fact question which was resolved against the defendant.

Ignoring for a moment the question of consent, defendant argues the search was unreasonable without a warrant. We disagree. The officer was confronted with a vehicle that could be easily moved. He detected a strong odor of marijuana. He observed marijuana seeds in the car. Immediately after stopping the car, he had observed some suspicious circumstances on the part of the defendant. Additionally, when he became aware of the marijuana odor he also heard a great deal of fan noise. At that time, he placed the occupants of the vehicle under arrest. As we said in State v. Holmberg (1975), 194 Neb. 337, 231 N. W. 2d 672: "Subsequent to the stop, by the use of his senses, the trooper became aware of the presence of marijuana. At that time, under our law, he had probable cause to search the camper for marijuana without the necessity of relying on consent, although he had consent in this case."

Probable cause for searching a motor vehicle is not treated the same as probable cause to search a fixed structure. The movability of the vehicle is an important factor. We have said many times that in the evaluation of the reasonableness of the search and seizure without a warrant, it is imperative that the facts be judged against an objective standard, to wit: The facts available to the officer at the moment of the search or seizure should warrant a man of reasonable caution to believe the action taken was appropriate. See State v. Romonto (1973), 190 Neb. 825, 212 N. W. 2d 641. In that case we said: "An officer is entitled to rely on his senses in determining whether contraband is present in a vehicle. If contraband is seen or smelled, the officer is not required to close his eyes or nostrils, walk away, and leave the contraband where he sees or

smells it. * * * Probable cause may result from the use of any of the senses. State v. Connor, 189 Neb. 269, 201 N. W. 2d 172."

Defendant's next assignment of error concerns the trial court's refusal to give an instruction on lesser included offenses. He requested an instruction which would give the jury alternatives of finding defendant guilty of possession of marijuana with intent to distribute, deliver, or dispense, or possession of marijuana in an amount less than 1 pound. The trial court refused to give the tendered instruction, holding it to be improper because it did not include the alternative of finding defendant guilty of possession of marijuana weighing more than 1 pound. The trial court then gave the defendant the opportunity to elect whether he wanted a proper instruction on lesser included offenses, or none.

The trial court said: "I believe that the defendant, if he desires to have the jury instructed on lesser-included offenses, that he should say so. If he refuses to make an election I then will give the instruction that simply gives the jury the alternative of finding him either guilty of the charge of possession of marijuana with intent to distribute, deliver or dispense, or not guilty, and will take it as an election on his part to refuse to request a lesser-included offense charge."

Defendant's counsel then stated that he would stand on the tendered instruction. The court stated he would take this as a refusal to elect to have a charge of a lesser included offense submitted to the jury. He then asked the defendant and his counsel individually if each of them understood the court's position. Both of them said they did, and the defendant said he joined with his attorney in his statement.

The instruction tendered by the defendant was not a proper instruction on the evidence adduced, and the defendant's attention was called to this fact. The purpose of the instruction conference is to give the parties

a chance to request proper instructions and not to provide a trap for the court. In the absence of a proper request, the trial court is not required to instruct in regard to lesser included offenses. State v. Maxwell (1975), 193 Neb. 807, 229 N. W. 2d 195.

The trial court explained the alternatives to the defendant, and the defendant elected to stand on his instruction. If the crime of mere possession was involved, the defendant was guilty of possession of more than 1 pound, or was not guilty. The trial court properly interpreted defendant's conduct to require the restriction of the jury to finding defendant guilty of possession of marijuana with intent to distribute, deliver, or dispense, or not guilty.

Defendant's last assignment is that the evidence was insufficient to establish the necessary elements of possession. The applicable rules are stated in State v. Foster (1976), 196 Neb. 332, 242 N. W. 2d 876: "Evidence that the accused had physical or constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession.

"Constructive possession may be proved by direct or circumstantial evidence, and may be shown by the accused's proximity to the substance at the time of the arrest or by a showing of dominion over the substance."

In order to prove unlawful possession the evidence must show the defendant had physical or constructive possession with knowledge of the presence of the drug as well as its character as a drug. Proof of guilty knowledge may be made by evidence of acts, declarations, or conduct of the accused from which the inference may be fairly drawn that he knew of the existence and nature of the substance at the place where it was found. In this case, there is proof of more than mere presence of the defendant at the place where the marijuana was found. There is the testimony of Dennis Diaz which directly inferred that the more than 1,000

pounds of marijuana belonged to defendant and that defendant intended to dispose of it in another state.

Defendant argues the testimony of Dennis Diaz was unworthy of belief, as he was an accomplice who was allowed to plead guilty to a misdemeanor. However, the jury was properly instructed that the testimony of Diaz should be closely scrutinized for any possible motives for falsification. The weight of the testimony is for the jury to determine under proper instructions. The jury was properly instructed herein, and the defendant has not challenged that instruction. There is no merit to this assignment.

For the reasons given the judgment should be and hereby is affirmed.

AFFIRMED.