STATE OF NEBRASKA, APPELLEE, V. RICHARD D. COLGROVE, APPELLANT.

253 N. W. 2d 20

Filed April 20, 1977. No. 40788.

James T. Hansen and Hugh Kenny, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

The sole issue on this appeal is whether certain physical evidence, seized in a search of the defendant's person and automobile and received in evidence at trial over the defendant's objection, should have been suppressed because the search and seizure were without the probable cause required by the Fourth Amendment to the Constitution of the United States and Article I, section 7, of the Nebraska Constitution. See, Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A. L. R. 2d 933; Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726. Previous to trial defendant had filed a timely motion to suppress under the provisions of section 29-822, R. R. S. 1943. After a pretrial evidentiary hearing the motion to suppress was denied. We find that the motion to suppress should have been sus-

tained and that therefore the defendant's conviction on charges of possession of marijuana and possession of a concealed weapon must be reversed.

The essential facts upon which a determination of the issue depends are not disputed in the record and are as follows. On the evening of August 28, 1975, at about 11 p.m., officer Miller of the Minatare, Nebraska, police department and deputy sheriff Aeschliman of Scotts Bluff County met, pursuant to previous arrangement, on a street in Minatare. Aeschliman had requested that Miller meet him to assist in locating the Arapahoe sisters, who lived some place north of Minatare and for whose arrest Aeschliman testified he had warrants. At about 11:15 p.m., the officers, each in his own vehicle, were parked in an off-street parking area immediately south of the intersection of Main and Railroad Streets in Minatare. While the officers were parked, an automobile belonging to the defendant Colgrove and driven by a young man by the name of Evans, in which Colgrove and a young man by the name of Boyer were passengers, was traveling west on Railroad Street. It stopped at a traffic sign on the east side of Main Street and then made a right-hand turn to go north on Main Street. At the time the Colgrove car stopped at the stop sign the officers were within 50 to about 100 feet from the place where the car stopped. Earlier Miller had informed Aeschliman that the Arapahoe sisters might be in a car belonging to the Herrera family. When Miller saw the defendant's car he informed Aeschliman that it might be the Herrera car. Aeschliman then stated, '' 'I will check that car out,' '' and asked Miller to back him up. Aeschliman proceeded to follow the defendant's car as it traveled north on Main Street and Miller followed in his own police car. Evans drove several blocks north on Main Street and then into a parking lot, and turned the car about preparatory to returning to Main Street and going back in the direction

from which he had come. At that point the car was stopped by Aeschliman who signaled and shouted at its occupants. At about the same time the two officers parked their cars respectively to the front and to the rear of the Colgrove automobile. When the officers stopped their own cars they became aware that there were three males in the car and no women. Aeschliman acknowledged at trial that his only purpose in stopping the car was to serve warrants on the Arapahoe sisters and that when he got out of his own car he knew they were not in the Colgrove vehicle. The officers acknowledged that they had observed no violations of law by the driver of the car or its occupants. Neither the car nor its occupants had done anything to arouse the suspicion of the officers. Neither were the officers investigating any crime which would give them occasion to make an investigatory stop of the Colgrove vehicle. Nonetheless, Aeschliman announced to Miller that he was going to check the identity of the occupants of the car. He testified that his purpose was to determine that the occupants of the car were not the Arapahoe sisters. He testified he had no other reason or purpose for stopping the car, nor was he making a traffic stop. Both Miller and Aeschliman were acquainted with Colgrove who was a resident of Minatare, as were apparently the other two young men. Minatare has a population of about 1,000.

Aeschliman went up to the car and asked the persons in the car for identification. He then determined that Evans did not have a driver's license on his person. Colgrove, who was in the front seat with Evans, then got out of the car, told Aeschliman that the car was his, and he handed Aeschliman his operator's license and the motor vehicle registration. Aeschliman then directed Evans to come to the sheriff's vehicle and there made a check by radio to determine whether Evans might be driving a vehicle while his operator's permit was under suspension.

The report was negative. At that time he directed Evans to exhale so he could smell his breath to test for alcoholic odor. He detected no such odor. However, he testified he smelled a slight odor of burned marijuana and that Evans' speech was slurred and he looked glassy-eyed.

Aeschliman then got out of his own car and went to the Colgrove car and directed Colgrove and Boyer to get out. At the same time he directed Miller to search the car. He ordered the defendant and Boyer to "spread eagle" against the car and then searched them. It was in the course of these searches that a small quantity of marijuana, some roach clips, a pipe, and the gun were found, none being in plain view with the possible exception of the roach clips. Colgrove and Evans were then told that they were under arrest and were handcuffed. Boyer was released. There is some dispute in the record as to whether the gun was found before or after the arrest was announced, but it is clear that Colgrove and Evans were in the process of being searched before the items were found. Aeschliman testified that the search of the car and of the other two parties were made because of the detection of the odor of marijuana on Evans.

The initial question in this case is, was a stop and a brief investigation reasonable in this instance? A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address, and an explanation of his actions. § 29-829, R. R. S. 1943; State v. Brewer, 190 Neb. 667, 212 N. W. 2d 90. A police officer may, in appropriate circumstances and in an appropriate manner, approach a person for the purpose of investigating possible criminal behavior even though there is no probable cause to make an arrest. State v. Brewer, *supra.* In State v. Aden, 196 Neb. 149, 241 N. W. 2d 669, we referred to Terry

v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, and said: "Terry v. Ohio, *supra*, authorizes a limited search in the form of a patdown to determine whether a person *whose actions are suspect* is armed." (Emphasis supplied.) The undisputed facts in this case show that the actions of the defendant and his companions gave no reasonable ground to suspect, nor did the officers have information of any kind which could reasonably lead them to any conclusion that the occupants of the Colgrove car were committing, or were about to commit, or had committed any crime. Neither were the officers in the process of any criminal investigation which might have made it reasonable to make inquiry of the car's occupants. In short, there was nothing in the circumstances or within the officers' knowledge, as demonstrated by the record, which gave any ground whatever for an investigatory stop such as is approved by Terry v. Ohio, *supra*, and by this court in State v. Brewer, *supra*; and State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129. See, also, Carpenter v. Sigler, 419 F. 2d 169; Brewer v. Wolff, 529 F. 2d 787.

Neither does this case come within the purview of State v. Holmberg, 194 Neb. 337, 231 N. W. 2d 672, where we considered and construed section 60-435, R. R. S. 1943, which authorizes the stopping of a vehicle for the purpose of checking registration and operator's license. There is no claim in this case that the stop in this instance was for that limited purpose. The admitted purpose here was to determine, for some reason which the record does not disclose, the identity of the car's occupants. It is readily apparent that if an officer without any cause for suspicion whatever may stop any and all vehicles for the purpose of determining the identity of the occupants, then the expectation of privacy to which persons traveling in motor vehicles are entitled under the Fourth Amendment to the Constitution of the United States, and under Article I, section 7, of the Nebraska

Constitution, is of no value whatever. In State v. Aden, *supra,* we said, quoting from Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790: "It would be intolerable and unreasonable if a[n] . . . agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search." In State v. Holmberg, *supra,* we said, in pointing out the possibility of abuse of the rights under section 60-435, R. R. S. 1943: "We have no hesitancy in saying that if the facts should disclose that the stop is a mere pretext for other reasons, it would be held to be arbitrary and unreasonable and violative of the Fourth Amendment." We find that the investigatory stop in this case was in violation of the Fourth Amendment to the Constitution of the United States, and Article I, section 7, of the Constitution of Nebraska.

When it became apparent that the persons for whom the officers were looking were not in the Colgrove car that vehicle should have been permitted to proceed. Even if the persons sought had been in the car, it could not, under the facts of this case, have justified the subsequent action of the officers.

It is axiomatic, of course, that if a search is without either warrant or probable cause, the fact that the search itself discloses contraband does not justify the unlawful search. Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134. In Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520, the United States Supreme Court noted that a search prosecuted in violation of the Constitution is not made lawful by what it brings to light. This is also the effect of our opinion in State v. Aden, *supra.*

Accordingly it is clear that the trial judge erred in denying the motion to suppress.

REVERSED AND REMANDED.

McCown, J., concurring.

It needs to be emphasized, as the opinion points out, that this case does not come within the purview of State v. Holmberg, 194 Neb. 337, 231 N. W. 2d 672. Neither is the basic holding in Holmberg involved.

Although the majority opinion here makes no reference to State v. Romonto, 190 Neb. 825, 212 N. W. 2d 641, for all practical purposes it overrules that case and should be read accordingly.

White, C. Thomas, J., joins in this concurrence.

Spencer, J., dissenting.

I respectfully dissent from the majority opinion herein. I do not agree with the statement that: "When it became apparent that the persons for whom the officers were looking were not in the Colgrove car that vehicle should have been permitted to proceed." After the sheriff's deputy had stopped the car he could have done one of two things. He could have acknowledged that he had made a mistake and permitted the car to proceed, or, as he did in this instance, checked the driver's license and the registration certificate for the vehicle.

Aeschliman, the sheriff's deputy, had a legitimate reason for making the stop. It definitely was not a pretext for any other purpose. He had been told that the persons for whom he had warrants were possibly in that car. That was his purpose for stopping it. It was not until the car was actually stopped that it became apparent to him that the persons for whom he was seeking were not in the car. This stop happened at 11:30 p.m., so visibility was not the best. When he noticed his mistake he did what he had a perfect right to do, ask the driver for his driver's license. When the driver told him he had none, the deputy sheriff properly ran a check to see if he was driving on a suspended license. The driver, who was only 16, had probably never obtained one. It was while running this check that it became evident from the driver's actions and the

smell of his breath and clothing that he had been smoking marijuana. Faced with these law violations, Aeschliman did what any good officer would do. The procedure he followed thereafter was in strict accord with good police work.

I emphasize that the stop in this case was not a mere pretext to have a reason to search the car. There was a reason for the stop. In the evaluation of the reasonableness of a search and seizure without a warrant, it is imperative that the facts be judged against an objective standard, to wit: The facts available to the officer at the moment of the search or seizure should warrant a man of reasonable caution to believe the action taken was appropriate. State v. Sotelo, 197 Neb. 334, 248 N. W. 2d 767 (1977). The search was not undertaken until it became apparent to Aeschliman that the driver had been smoking marijuana.

This case is not too different from State v. Benson, filed March 16, 1977, *ante* p. 14, 251 N. W. 2d 659, where the stop was made pursuant to a radio alert. Here, also, there was a definite reason to stop the vehicle. We upheld the search in Benson because the officer smelled a strong odor of marijuana. We there stated that was sufficient to furnish probable cause to search the vehicle without a warrant.

I reemphasize, in this case this was not a stop made on the open highway in broad daylight. It was a stop made at 11:30 at night in an attempt to accomplish the purpose for which Aeschliman had made the trip from Gering to Minatare.

WHITE, C. J., and BOSLAUGH, J., join in this dissent.

WHITE, C. J., dissenting.

The issue in State v. Holmberg, 194 Neb. 337, 231 N. W. 2d 672, was whether a peace officer was authorized to stop any automobile for the purpose of ascertaining whether the operator possessed a valid operator's license. We held section 60-435, R. R. S. 1943, authorized such a stop and rejected a conten-

tion that such a stop was unlawful unless the officer had some other reasonable cause for stopping the vehicle.

In this case the majority seems to hold that an officer who stops a motor vehicle and asks the operator to produce his license has made an illegal stop if the officer has any other motive or purpose in mind at the time. This argument was rejected in United States v. Turner, 442 F. 2d 1146 (8th Cir., 1971), where the court said: "Defendant was operating a 1964 Chevrolet Impala on August 13, 1970, in the City of St. Louis. The car had been reported missing the day before by its owner in the State of Indiana. A St. Louis police officer testified that he noticed the car being driven with the trunk lock punched out. He stopped the car as a matter of routine check and inquired if the defendant operator had a driver's license. The defendant replied that he did not. He was then arrested under V.A.M.S. § 302.020, for operating a motor vehicle without a driver's license. After being informed of his rights, the defendant told the officer that the car belonged to a friend of his in Indianapolis. The police officer made a check to see if the car had been stolen. On the following day the police were notified that it was a stolen vehicle.

"The police officer clearly had probable cause to arrest the defendant for failure to have a proper driver's license under Missouri law. It is argued, however, that the officer's motive in stopping defendant's car was not to check his driver's license, but merely to pursue his suspicion of some other crime. Thus, it is contended that the officer wanted to make an unwarranted search for evidence of some unidentified crime. We do not find it unreasonable for an officer to inquire as to a driver's license under these circumstances. It is conceded under the state law of Missouri that an officer has a right to stop an automobile to make a routine check for an operator's license. See Jackson v. United

States, 408 F. 2d 1165, 1168 (8 Cir. 1969); Rodgers v. United States, 362 F. 2d 358, 362 (8 Cir. 1966). Cf. Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Carpenter v. Sigler, 419 F. 2d 169 (8 Cir. 1969). Under these circumstances it is difficult to rationalize that this right of preliminary inquiry may be obviated because suspicious circumstances, even though they may be unfounded, might have motivated an officer to investigate."

In State v. Holmberg, *supra,* we pointed out that after a driver, who has been stopped and asked to produce his license, has produced his license, he must be allowed to continue on his way if the license is in order. In this case the driver, Evans, could not produce a license. The officer was then justified in ascertaining whether a license had been issued to Evans. It was during this investigation that the officer noticed the odor of marijuana which in turn justified a further investigation.

BOSLAUGH, J., joins in this dissent.