STATE OF NEBRASKA, APPELLEE, v. ROBERT W. RYLAND,
APPELLANT.
486 N.W.2d 210

Filed July 17, 1992.   No. S-91-554.

Richard H. Jensen for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The deputy sheriff who arrested Robert W. Ryland had no probable cause to stop Ryland while he was driving his motor vehicle, and therefore, Ryland's Garden County Court jury conviction of driving while under the influence of alcoholic liquor, or while driving with a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 210 liters of his or her breath, must be reversed.

In reviewing a criminal conviction, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence. Such matters are for the finder of fact, and the verdict must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

Taking the view most favorable to the State, the evidence reflects that on June 19, 1989, a Garden County deputy sheriff twice attempted, unsuccessfully, to contact Ryland by telephone. The deputy wanted to obtain a statement from Ryland concerning an auto accident witnessed by him the previous week. There was a question as to whether a driver in that accident was driving while under the influence of alcohol. The deputy testified that during the evening of June 19, he noticed a man resembling Ryland getting into an automobile. The deputy said he parked his patrol car at the intersection of

two highways, where he believed Ryland would be passing through on his way home. After verifying through the sheriff's office that the car was registered in Ryland's name, the deputy pulled his patrol car behind Ryland's automobile when it entered the intersection. The deputy activated his red lights and flashed his headlights. He followed Ryland in this manner for over a mile. The deputy said that at no time while he was driving behind Ryland did he observe Ryland violate any rule of the road and that the deputy's sole purpose in stopping Ryland was to obtain his statement about the previous accident.

The deputy testified that after Ryland stopped his automobile, the deputy parked his vehicle a few feet behind it. The deputy approached the car he had followed and identified the driver as Ryland. Ryland testified that the deputy said, " 'Mr. Ryland, I am not stopping you for a moving violation. I would like to have a statement from you. Would you give me one?' And I said, 'Be happy to, certainly.' " The deputy testified that Ryland was "wobbly" as he walked back to the patrol car and that after Ryland got into the patrol car the deputy noticed that Ryland's eyes were watery and bloodshot and his speech was slurred. Ryland attempted to write a statement about the accident of the previous week, but was unable to complete the task. The deputy stated that he asked Ryland if he had been drinking, to which Ryland replied, "Of course. Probably too much."

After Ryland was unable to recite the alphabet, the officer arrested him. Ryland then told the deputy that "I'm guilty, no sense of arguing about that." Ryland was transported in the patrol car to the sheriff's office, where he consented to a breath test, which showed that his breath contained sixteen-hundredths of 1 gram of alcohol per 210 liters of breath.

At a July 19, 1989, hearing, Ryland moved to suppress any evidence against him obtained on June 19. The State acknowledged that Ryland had not violated any law when he was stopped by the deputy. Before trial and out of the presence of the jury, the court indicated that it had ruled adversely to Ryland on his suppression motion. The court told the defendant's counsel that he would be permitted to object to the introduction of the evidence the court refused to suppress, but

that defendant's counsel must refrain from giving the reasons for his objection. The trial court ruled that "the constitutional issue [legality of stopping Ryland] must be resolved in favor of the State because this defendant was not the target of any investigation; therefore, the 4th Amendment is not involved." The court allowed Ryland a continuing objection to the evidence obtained after Ryland was stopped.

Following a jury trial, Ryland was found guilty of driving while under the influence of alcoholic liquor, or while driving with a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 210 liters of his or her breath. He timely appealed to the district court, which affirmed the judgment of the county court. The district court found that "the officer's stopping of defendant's vehicle and subsequent arrest of defendant was a reasonable exercise of his duties as a police officer and was justified under the circumstance; was not an arbitrary stop; was not a pretext for other reasons; and was not violative of defendant's constitutional rights."

On appeal, Ryland's first three assignments of error combine to assert that the trial court erred (1) in finding that the deputy's stop of Ryland's vehicle was constitutionally permissible and (2) in receiving into evidence at Ryland's trial evidence and statements obtained by the deputy after Ryland was stopped. We disagree with the trial court's statement that the Fourth Amendment to the U.S. Constitution is not involved in this case.

A person is seized within the meaning of the Fourth Amendment to the U.S. Constitution only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. See *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). Under the circumstances of being pursued by a patrol car which had its red lights activated and its headlights flashing, a reasonable person in Ryland's position would believe he or she was not free to leave the officer's presence. Furthermore, had he not obeyed these signals from the deputy, Ryland could have been in violation of Neb. Rev. Stat. § 39-604(1) (Reissue 1988), which provides that "[a]ny person who knowingly fails or refuses to obey any lawful order of any law enforcement officer who is

controlling or directing traffic shall be guilty of a traffic infraction." It is universally understood that when a law enforcement patrol car is following an automobile and the red lights of the patrol car are activated, such activity by the driver of the patrol car constitutes an order for the driver of the automobile being followed to stop.

Under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). See, also, *State v. Colgrove*, 198 Neb. 319, 253 N.W.2d 20 (1977). In *Colgrove*, we reversed the defendant's convictions of possession of marijuana and possession of a concealed weapon. Police officers had stopped the defendant's car in an attempt to locate persons for whom the officers had arrest warrants. A subsequent search of the defendant's person revealed drugs and a weapon. In holding that the investigatory stop was in violation of the Fourth Amendment to the Constitution of the United States and article I, § 7, of the Constitution of Nebraska, we stated that

> [t]he undisputed facts in this case show that the actions of the defendant and his companions gave no reasonable ground to suspect, nor did the officers have information of any kind which could reasonably lead them to any conclusion that the occupants of the Colgrove car were committing, or were about to commit, or had committed any crime. Neither were the officers in the process of any criminal investigation which might have made it reasonable to make inquiry of the car's occupants. In short, there was nothing in the circumstances or within the officers' knowledge, as demonstrated by the record, which gave any ground whatever for an investigatory stop
> . . . .

*Id*. at 324, 253 N.W.2d at 23.

Similarly, the facts in this case, also undisputed, show that the deputy was not aware that Ryland had violated any rule of the road at the time he was stopped and that the deputy's sole

purpose in stopping Ryland was to obtain his statement about a previous accident that Ryland had witnessed. The deputy acknowledged that obtaining the statement from Ryland was not an emergency matter.

Because the deputy had no probable cause to stop Ryland and because the deputy had no reasonable suspicion of the existence of criminal activity, his actions were constitutionally impermissible under the Fourth Amendment to the Constitution of the United States and article I, § 7, of the Constitution of Nebraska. The trial court should have sustained Ryland's motion to suppress and should have disallowed at trial any evidence obtained by the deputy after the stop.

We reverse Ryland's conviction for driving while under the influence of alcoholic liquor or while driving with a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 210 liters of his or her breath. Because all of the evidence obtained by the deputy sheriff was inadmissible over objection, we remand the cause to the district court with directions to remand the cause to the county court with directions to dismiss the charge against Ryland. In view of our holding, we need not address Ryland's remaining assignments of error.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

BOSLAUGH, J., dissenting.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit only unreasonable seizures. The issue is whether the seizure of the defendant was unreasonable. It seems to me that the issue must be resolved by consideration of all of the facts and circumstances in the case.

In *State v. Colgrove*, 198 Neb. 319, 324, 253 N.W.2d 20, 23 (1977), we noted that the officers who had stopped the defendant were not "in the process of any criminal investigation which might have made it reasonable to make inquiry of the car's occupants."

In *State v. Joao, Jr.*, 56 Haw. 216, 533 P.2d 270 (1975), the defendant was stopped by a police officer who had been assigned to investigate a traffic accident in which the defendant

was believed to have been involved. After the defendant was stopped, the officer asked the defendant and a passenger to leave the automobile, after which a firearm was discovered in plain sight. The court held that the stop was lawful, but that the request that the defendant and the passenger leave the automobile was not justified. In holding that the initial stop was lawful, the court said:

> The initial stop in this case was proper. *Cf. State v. Tsukiyama*, 56 Haw. 8, 525 P.2d 1099 (1974). *Compare, United States v. Ward*, 488 F.2d 162 (9th Cir. 1973); *People v. Parisi*, 393 Mich. 31, 222 N.W.2d 757 (1974). Officer DeCaires had a perfectly legitimate reason for stopping the defendant in the first instance. He had been assigned to question him relative to a traffic accident which had occurred previously. However, the officer had been unable to carry out his assignment because of his inability to locate the defendant earlier. Had the stop been limited simply to afford the officer the opportunity to arrange for an interview with the defendant at a more reasonable hour and location, there could have been no legal flaw in the police procedure.

*Joao, Jr.*, 56 Haw. at 218, 533 P.2d at 272. See, also, *Michigan State Police Dept. v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990); *Williamson v. U.S.*, 607 A.2d 471 (D.C. App. 1992).

If the opinion in the *Ryland* case is understood to mean that any stop where the officer does not have a reasonable suspicion, supported by articulable facts, that criminal activity exists, then it goes too far.

An interesting hypothetical situation to consider would be to determine what the officer should do if Ryland, after stating that he would " '[b]e happy' " to give a statement, had added: "Just as soon as I dispose of the dead body in the trunk."

HASTINGS, C.J., joins in this dissent.