STATE OF NEBRASKA, APPELLEE, V.
THOMAS L. WELCHEL, APPELLANT.

299 N.W.2d 155

Filed November 21, 1980. No. 43224.

Dennis R. Keefe, Public Defender, Richard L. Goos, Chief Public Defender, and Dennis G. Carlson for appellant.

Paul L. Douglas, Attorney General, and Linda A. Akers for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Defendant, Thomas L. Welchel, age 26 at the time of the crime, was charged with having, on July 13, 1978, committed a first degree sexual assault upon a female, age 21, whom we will hereafter refer to as the victim or by the appropriate pronoun. Defendant was charged in a second count with having, on the same occasion, robbed her by forcibly and by violence, or by putting in fear, taking from her the sum of about $20.

The defendant entered a plea of nolo contendere to the charge of sexual assault. The record clearly establishes that the plea was voluntarily and intelligently made. Evidence was received by stipulation on the issue of whether the defendant was a mentally disordered sexual offender and the court found he was not.

The defendant pleaded not guilty to the robbery charge and waived a jury trial. He also made other waivers necessary to try the case in the fashion employed. The defendant waived his right to confront witnesses and the right to object to evidence as hearsay. The defendant did not testify on his own behalf and that right was expressly waived. All these waivers appear to have been voluntarily and intelligently made with advice of counsel.

Pursuant to stipulation, the defendant was tried by the court upon documentary evidence, including a deposition of the victim taken on behalf of the defendant, the deposition of a physician who examined the victim shortly after the incident, investigative reports compiled by police officers, and other evidence. No statement by him, exculpatory or otherwise, was offered at trial.

The trial judge accepted the plea to the assault charge, found the defendant guilty of both charges, and sentenced him to a term of 7 to 10 years on the charge of sexual assault and to a term of not less than 3 nor more than 10 years on the robbery count, the terms to be served consecutively.

On appeal to this court, only the following two errors are assigned: (1) The court erred in finding the defendant guilty of robbery because the evidence was insufficient, as a matter of law, to warrant such a conclusion, and (2) The sentences and their imposition as consecutive terms are excessive. We affirm the judgment and sentences.

The evidence, which defendant claims was insufficient to support his robbery conviction, appears throughout the record in a rather disjointed fashion because of the manner in which this case was tried, all as previously described. However, it was sufficient for the judge, as the trier of fact, to find the following. On the evening of July 12, 1978, at about 8:30 p.m., the victim went to a tavern in north Lincoln. She held a full-time job, but was also employed part-time at the tavern. She was not working on the evening involved; she visited, drank, and danced with friends and acquaintances until closing time.

At some time during the evening, the defendant, who was present at the tavern, approached the victim, introduced himself as "Tom," and asked her to dance. She declined. During the course of the evening she, on at least one occasion, paid for drinks with coins contained in a small lidded jar which she carried in her purse. These coins were quarters, dimes, and nickels which she accumulated while working as a waitress at the tavern. She also had a $10 and a $1 bill in her billfold, along with credit cards and personal identification. She used the dollar bill to pay for a drink.

The victim left the tavern at 1 a.m., July 13. As she was walking through the parking lot, the defendant suddenly approached and began a conversation with her. He walked the victim to her automobile and asked her to drive him to his own car which was located elsewhere on the lot. She apparently acceded to the request and defendant got into her car. She drove him to another part of the lot. He then throttled her with

his hands, forced her to disrobe, and placed a belt strap around her neck, drawing it tight. He drove her car northward out of Lincoln. The victim remained captive about 2 1/2 or 3 hours. During that time, he repeatedly assaulted her sexually by vaginal, rectal, and oral penetration. He further sexually abused her by thrusting various hard objects into her bodily openings. He also beat her with the strap, used it as a leash to lead her, and subjected her to other indignities which we will not describe. Some of the assaults occurred in the car and some outside of it.

After the first series of assaults, the defendant dressed and entered the car, leaving the victim lying naked on the ground with the strap about her neck. She stated she was in fear for her life. At that time, she was about 4 feet from the car. She could see the defendant's face, but not the rest of him. She heard the coins being emptied from the glass jar. Later, she found the empty jar and her billfold in the back seat of the car. The $10 bill was missing from her billfold. Some time during this period, defendant told the victim he knew where she lived. The inference is that he obtained this information from the contents of her billfold. He threatened to kill her if she told anyone about the incident.

Defendant then got the victim into the car and started back to Lincoln. Sexual assaults were repeated on the way.

He let her leave the car about 1/2 mile from the tavern. He told her she would find her car in the parking lot at the tavern. Defendant then apparently drove the car to the tavern lot and left it. She walked to the tavern, found her car, and drove to her place of residence. There, she told her female roommate that she had been raped and robbed. The roommate called the rape crisis center. The police were notified. The victim was taken to a hospital for examination and treatment.

The examining physician found bruises, abrasions,

swelling, and wounds about the body, including internal injuries. The physician stated, in her deposition, that among the considerable number of sexual assault victims she had examined, she had never seen one as badly abused as this victim.

The victim identified defendant as her attacker. She selected his picture from a group of photographs of young men. The defendant was later apprehended in the state of California.

Defendant argues that the evidence does not, as a matter of law, support his robbery conviction. This contention is based upon the premise that no evidence was introduced showing that the victim's money was taken forcibly and by violence, or by putting in fear. It is argued that the evidence conclusively shows that the force, violence, and intimidation, or putting in fear, were the means by which the sexual assaults were committed and that the theft was "subordinate and incidental"; that the assaults were "sexual in character" and motivation. The defendant argues that he made no demand for the victim's property as evidenced by her own deposition: "He never demanded any money from me," and "He just made me fear of my life, but not for property . . . ." Thus, defendant claims, there was no evidence of robbery, but merely of larceny.

The difficulty with the latter part of this argument is that a thief may commit the crime of robbery without demanding property from his victim or causing his victim to fear its loss. A demand for property and fear of its loss are not constituent elements of robbery.

Robbery is an offense against both the victim's person and property. "In so far as it is against the person, it consists . . . [of] personal violence or personal intimidation." *Cobern v. State*, 273 Ala. 547, 550, 142 So. 2d 869, 870 (1962), quoting *Thomas v. State*, 91 Ala. 34, 9 So. 81 (1890). Suppose, e.g., that a robber approached a victim from the rear, hit him on the head, rendered him unconscious, and then relieved him of his jewelry,

money, and watch. Merely because the robber made no demand for the victim's valuables and the victim never feared losing his property, it would be ludicrous to argue that the evidence is insufficient to support a robbery verdict.

Defendant also argues that no evidence was introduced from which it may be inferred that he intended to use violence and intimidation to take the victim's property when the initial sexual assaults, i.e., those preceding the theft, were committed. Instead, defendant claims, the theft was a mere afterthought. To support this argument, the defendant cites *State v. Blunt*, 187 Neb. 631, 193 N.W.2d 434 (1972); 77 C.J.S. *Robbery* § 7, p. 452; and *Wilson v. State*, 170 Neb. 494, 103 N.W.2d 258 (1960), *cert. denied* 364 U.S. 887, 81 S. Ct. 178, 5 L. Ed. 2d 108 (1960). Defendant also relies upon a quotation from C.J.S. which says: "The force or intimidation essential to robbery need not precede the taking of the property. However, it must either precede or be contemporaneous with such taking, in the sense that the force or intimidation must be concurrent or concomitant with the taking. Subsequent force cannot relate back to the act of taking so as to be considered force accompanying the act, and the general rule is that violence or intimidation subsequent to a taking by other means will not render the act robbery." 77 C.J.S. *Robbery* § 11, p. 457.

Neb. Rev. Stat. § 28-324 (Reissue 1979) reads, in part: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever."

In *Wilson v. State, supra,* we said at 504, 103 N.W.2d at 266: "The essence of the statute is that the money or property must be in the possession or under the control of the victim and that violence or putting in fear was the means used by the robber to take it." As interpreted by this court, it is not necessary that the property be taken from the "person." It is sufficient if it is taken

from the individual's personal presence, protection, or control. *Cherpinsky v. State*, 122 Neb. 52, 238 N.W. 917 (1931). Defendant seems to concede that this requirement is satisfied by the evidence here.

In *State v. Blunt, supra*, we said at 632, 193 N.W.2d at 435: "An essential element of the crime of robbery is that the theft be accomplished by the use of force, violence, or intimidation. See § 28-414, R. R. S. 1943. Force relied upon must be sufficient to effect a transfer of the property from the victim to the robber and if it is sufficient to overcome resistance, the degree is immaterial."

We have also said that in order for a theft to constitute the crime of robbery, it must be accomplished either by force or violence or by placing in fear. *State v. Adkins*, 200 Neb. 775, 265 N.W.2d 454 (1978).

We must bear in mind that the question before us is not whether the trier of fact was entitled to find that the theft was a mere larceny. Clearly, he might have done so if he was convinced that the theft was an afterthought. If the trial had been before a jury, defendant would, no doubt, have been entitled to an instruction on larceny as a lesser-included offense. The question is whether he was required by the evidence to do that, i.e., was a conclusion of larceny the only reasonable inference supported by the evidence. Equally clearly, it was not.

Intent is a mental process and, in the absence of a direct expression of intention by the actor, that intention (as well as the time of its formation — where material) must be inferred from the nature of the acts and the surrounding circumstances. *State v. Journey*, 201 Neb. 607, 271 N.W.2d 320 (1978); *State v. Brown*, 174 Neb. 393, 118 N.W.2d 332 (1962).

It is but to state the obvious to say that intentions to rape and to rob may coexist. Violence immediately preceded the theft. The evidence before the court permitted the inference that defendant may have, from the beginning, intended both to rob and to rape.

Clearly, it also permits the inference that effects of the violence and intimidation still existed when the theft occurred. The trier of fact was entitled to find that the theft was accomplished by force or intimidation. See, *Cobern v. State, supra; State v. Iaukea,* 56 Hawaii 343, 537 P.2d 724 (1975); *Howard v. Commonwealth,* 313 Ky. 667, 233 S.W.2d 282 (1950).

Defendant argues various claimed discrepancies between the victim's statements and what she allegedly told others as shown by the officers' investigation reports. These were matters of detail and raised, at most, questions of credibility. Credibility is for the trier of fact and not this court on appeal. *Wilson v. State, supra.*

The claim that the sentences are excessive is wholly without merit.

AFFIRMED.