STATE OF NEBRASKA, APPELLEE, V. ROBERT A. SUTTON, APPELLANT.

368 N.W.2d 492

Filed May 31, 1985.   No. 84-728.

James P. Miller and Owen A. Giles, for appellant.

A. Eugene Crump, Deputy Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendant, Robert A. Sutton, was convicted of burglary and robbery and sentenced to 3 years' probation. One of the conditions of probation was that the defendant be confined in jail for 90 days and make restitution. The defendant has appealed and contends the evidence was insufficient to support a finding of guilty.

The record shows that the victim, Bonnie Stephens, lived in a third-floor apartment in Bellevue, Nebraska. The theory of the State is that the burglar climbed up to the balcony of the victim's apartment from a lower balcony and entered the apartment from the balcony.

On September 10, 1983, the victim was awakened around 1:30 a.m. when she heard the sound of coins being dropped on her dining room table. When she went to investigate, she saw the defendant standing by her dining room table taking money from her billfold. When she asked him what he was doing, he replied, "I'm stealing from you."

The victim ran out the front door to a neighbor's apartment. The defendant pursued and attempted to grab her, but then ran down the back stairs when the neighbor, Richard Tucker,

answered the door. Another neighbor from a lower floor came to her aid after hearing her scream. Both tried to calm her and returned with her to her apartment.

Richard Tucker then called the police, who recorded the call at 1:27 a.m.

Upon returning to her apartment the victim discovered that a gold ring worth $200 was gone from her billfold. She also noticed the screen door to her balcony had been opened, and the curtain above the door was down. She remembered shutting the screen door when she went to bed but leaving the balcony sliding glass door open. When the police arrived, the victim gave them a description of the burglar. Later, she gave them a description of the burglar for a composite drawing.

Following the incident, the victim saw the defendant near her apartment on two occasions. She first saw him as he was carrying a stereo into a neighbor's apartment. She did not call the police at that time because it was dusk and the hall was poorly lighted. She saw the defendant again on November 9 on the street near her apartment. She notified the police at that time, and the defendant was arrested.

The defendant waived a jury trial, and at the conclusion of the trial was found guilty of both counts.

In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and a verdict made by the trier of fact must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Goodon*, 219 Neb. 186, 361 N.W.2d 537 (1985); *State v. Smith*, 219 Neb. 176, 361 N.W.2d 532 (1985).

With respect to the burglary, Neb. Rev. Stat. § 28-507(1) (Reissue 1979) provides, "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." Evidence of any act of physical force, however slight, by which the obstruction to entering is removed is sufficient to prove a breaking. *State v. Classen*, 216 Neb. 323, 343 N.W.2d

749 (1984); *State v. Campbell*, 190 Neb. 394, 208 N.W.2d 670 (1973). The opening of a closed door to enter a building is a "breaking" within the definition of burglary. *State v. Sedlacek*, 178 Neb. 322, 133 N.W.2d 380 (1965).

The victim testified that she had closed the screen door to the balcony before she went to bed. After the incident the door was open and the curtain above the doorway had been knocked down. This was evidence of physical force sufficient to sustain the burglary conviction.

Robbery is committed when property is taken from a person through the use of force, violence, or intimidation. *State v. Davis*, 214 Neb. 474, 334 N.W.2d 450 (1983); Neb. Rev. Stat. § 28-324 (Reissue 1979). "As interpreted by this court, it is not necessary that the property be taken from the 'person.' It is sufficient if it is taken from the individual's personal presence, protection, or control." *State v. Welchel*, 207 Neb. 337, 342-43, 299 N.W.2d 155, 159 (1980). The force relied upon must be sufficient to effect a transfer of the property from the victim to the robber, and if it is sufficient to overcome resistance, the degree is immaterial. *Welchel, supra.*

In the present case it was 1:30 in the morning when the victim found a stranger in her dining room, going through her billfold. She was only 1 or 2 feet from him when he told her, "I'm stealing from you." The proximity, time, words, and actions of the defendant were sufficient to intimidate and scare the victim. As she ran screaming from her apartment, the defendant pursued her. The intimidation coupled with the theft of the gold ring from the victim's billfold was sufficient evidence to constitute robbery. The evidence shows that the fear continued for several days after the robbery.

The victim's testimony at trial was sufficient to sustain the conviction on both counts. The fact that all of the events of the robbery were not directly corroborated does not impair the sufficiency of the evidence. See *Davis, supra.*

The victim provided the police with a description of the burglar on several occasions. The composite drawing which was prepared from her description bears a striking resemblance to the defendant. The victim made a positive identification of the defendant in a photo lineup and at the trial.

The defendant's principal contention is that his evidence of an alibi prevented a finding of guilty. The manager of the Crown Court Lounge testified that the defendant was working at the bar on the evening of September 9 and that his timecard indicated he "clocked out" at 1:21 a.m. on September 10. The arresting officer testified it would take 4 to 4½ minutes to drive from the bar to the victim's apartment. The police recorded the burglary and robbery as having happened at 1:25 a.m.

This evidence presented a question of fact for the trial court. See *State v. Martinez*, 181 Neb. 392, 148 N.W.2d 841 (1967). Evidence tending to prove an alibi does not destroy the sufficiency of the evidence to support a finding of guilt, but only presents conflicting evidence on a question of fact. *Duffey v. State*, 124 Neb. 23, 245 N.W. 1 (1932).

> "A defendant, to establish an *alibi*, must not only show he was present at some other place about the time of the alleged crime, but also that he was at such other place such a length of time that it was impossible for him to have been at the place where the crime was committed, either before or after the time he was at such other place."

*Mays v. State*, 72 Neb. 723, 725, 101 N.W. 979, 980 (1904).

Although there is evidence that the defendant was working at the Crown Court Lounge on the evening of September 9, 1983, and his timecard shows that he was "clocked out" at 1:21 a.m. on September 10, there was no testimony that anyone saw the defendant "clock" himself out that night. The manager of the bar testified it is possible for employees to clock each other out. There was no evidence that the clocks at the bar and the police station reflected the exact same time.

No witnesses other than the victim testified that they saw the defendant at the time of the crime. The defendant's evidence of an alibi was not such as to prevent a finding of guilty beyond a reasonable doubt.

The judgment is affirmed.

AFFIRMED.

GRANT, J., dissenting in part.

I agree that the facts presented to the trial judge in this jury-waived case are sufficient to prove that a burglary was committed and to convict defendant of that burglary, in that the

victim positively identified defendant as the man she saw in the semidarkness of her dining room for "just a few seconds" and then identified 2 months later when she saw him on the streets of Bellevue and called the police. The victim also testified she had some further opportunity to identify defendant:

Q. [Defense counsel] . . . There was enough light in the apartment to see him?

A. I saw him more when he chased me out into the hallway.

Q. Was he still face to face with you at that time?

A. Yes.

Q. Still didn't notice anything about him?

A. I was too scared.

In connection with this further identification, it must be noted that the victim escaped from defendant by running quickly to the front door of the apartment, unlocking the door, taking the chain lock off, turning the knob, throwing the door open, and running across the hall, and that during this time while defendant was chasing the victim, he did not, according to the victim's testimony, touch her at all. The positive identification evidence, however, if believed by the trier of fact, is legally sufficient to overcome defendant's alibi evidence as presented to the trial court and as discussed in our opinion.

While I think we have stretched to the limit the holding of *State v. Ammons*, 208 Neb. 812, 813-14, 305 N.W.2d 812, 814 (1981), that "[i]t has long been the rule in this state that except in certain crimes such as sexual assault, a conviction may rest upon the testimony of a single eyewitness," I believe the evidence is legally sufficient to support a conviction of the crime of burglary. I therefore join in the court's affirmance of that conviction.

As I read the record, however, I do not think the evidence supports the conviction of robbery. When he was first seen by the victim, defendant had the victim's billfold in his hands. The victim testified as follows:

Q. [Deputy county attorney] What did you see once you got out there?

A. Someone was standing at my kitchen table with my billfold and my money in their hands. The light came

in from my patio door. There was an outside light in the apartment and it shined in my apartment. Someone was standing at my dining room table with my billfold in their hands.

. . . .

Q. What was the person doing?
A. They had my billfold in their hands and they were taking money out of it.

. . . .

Q. Did you discern that anything was missing from the apartment?
A. There was a ring that was taken out of my billfold.

. . . .

Q. Okay. Did you ever discover that anything else was missing from the apartment - - -
A. No.
Q. - - - other than the ring?
A. No.

The testimony of the victim is clear that nothing was taken except her ring. In view of the immediate chase toward the door, the ring had to have been removed from the billfold before the victim first saw the defendant. Apparently, the victim's appearance startled defendant and no money was removed from the apartment. The only property taken from the victim, therefore, was not taken from her through the use of force, violence, or intimidation. Any loss occurred before the victim was aware that a loss had occurred—a typical burglary. I do not believe the evidence supports a conviction of the crime of robbery. I would reverse defendant's conviction of that crime.

I believe it should be noted that counsel representing defendant on this appeal did not try this case.