STATE OF NEBRASKA, APPELLEE, V. BENNY R. FOSTER, APPELLANT.
476 N.W.2d 923

Filed November 22, 1991.    No. 90-1139.

Robert P. Lindemeier, of Ruff, Florom & Nisley, for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendant-appellant, Benny R. Foster, urges that the district court, through the Honorable Jack H. Hendrix, erred in changing its original sentence. We affirm.

Pursuant to pleas entered in accordance with an agreement with the plaintiff-appellee State, Foster was adjudged guilty in each of two cases. In district court case No. 13,819, he was adjudged guilty of third degree assault on an officer, in violation of Neb. Rev. Stat. § 28-931 (Reissue 1989), a Class IV felony punishable by imprisonment for up to 5 years, Neb. Rev.

Stat. § 28-105 (Reissue 1989). In district court case No. 13,840, he was adjudged guilty of attempted criminal mischief, in violation of Neb. Rev. Stat. §§ 28-201 and 28-519 (Reissue 1989), a Class I misdemeanor punishable by imprisonment for a period of not more than 1 year, Neb. Rev. Stat. § 28-106 (Reissue 1989).

In conformance with the parties' agreement, Judge Hendrix imposed the sentence in each of the cases at a single sentencing hearing. Only the sentence on the assault conviction, No. 13,819, is involved in this appeal; the attempted criminal mischief sentence, No. 13,840, was the subject of a separate appeal and was summarily affirmed. *State v. Foster*, 237 Neb. xxxv (case No. 90-1138, Mar. 22, 1991).

In imposing the sentences, Judge Hendrix observed that given Foster's past record, "close to the maximum sentence is what must be imposed . . . ." Judge Hendrix went on to say:

[Foster] is sentenced in Case 13,819 to one year with the Department of Corrections . . . .

In Case 13,840, criminal mischief, it is the judgment of the court that [Foster] be and he hereby is sentenced to the Department of Corrections for a period of not less than eighteen months nor more than five years. Said sentence . . . is consecutive to and not concurrent with the sentence in Case 13,819, for assault of an officer.

Judge Hendrix then asked the prosecutor whether he, the judge, had overlooked anything. The prosecutor responded that he believed the sentences had been turned around, pointing out that the assault was a felony and the attempted criminal mischief was a misdemeanor. Judge Hendrix commented that he had been looking at the probation officer's report, which had switched the crime classifications around. He then announced that in the assault case, No. 13,819, the sentence was to be 18 months to 5 years and that in the attempted criminal mischief case, No. 13,840, the sentence was to be 1 year.

The record contains a single journal entry which recites only that the assault sentence is as last mentioned above; the record does not include the trial docket.

The proposition that a "sentence validly imposed takes effect

from the day it is pronounced and a subsequent sentence fixing a different term is a nullity" appears to have first found expression in this court's syllabus in *State v. Brewer*, 190 Neb. 667, 668, 212 N.W.2d 90, 91 (1973). This precise statement is not, however, contained in the *Brewer* opinion.

Therein, the trial court had, during its morning session, imposed a sentence of imprisonment for a period of 20 months to 5 years for possession of a firearm. Later that day, another hearing was held, at which time the State informed the trial court that it intended to prove Brewer was a habitual criminal. The trial court then professed to set aside its earlier sentence and, at a hearing held a week later, found that Brewer was a habitual criminal and thereupon purported to sentence him to imprisonment for a period of 10 to 15 years. On appeal, this court concluded it was obvious that the trial court had meant to impose the sentence it pronounced the first time it considered the matter, and held the second sentence to be a nullity. It noted that the situation did not present a "case where there was some ambiguity in the sentence or inadvertent misstatement in pronouncing it." *Id*. at 676, 212 N.W.2d at 95. The *Brewer* opinion also stated it to be

> the majority rule long followed in this state that when a valid sentence has been put into execution the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. Any attempt to do so is of no effect and the original sentence remains in force.

*Id*. at 676-77, 212 N.W.2d at 95.

In *State v. Snider*, 197 Neb. 317, 248 N.W.2d 342 (1977), the trial court imposed a sentence of probation for the killing of a steer. When probation was revoked after violation of the probation order, the trial court imposed a prison sentence of 1 to 2 years, with credit given for jail time spent awaiting hearing. While leaving the courtroom after that sentence was imposed, Snider slammed the door behind him. The trial court immediately ordered Snider back into the courtroom and resentenced him to a term of 1 to 2 years without the previously announced credit for jail time. On appeal, Snider argued that the trial court had erred in modifying the sentence first

imposed. This court agreed, stating:

> It is to be noted that the change in this instance was not the clarification of an ambiguity or correction of a prior misstatement in announcing sentence. The rule is that a sentence validly imposed takes effect from the time it is pronounced and that a subsequent sentence fixing a different term is a nullity.

*Id.* at 319, 248 N.W.2d at 343, citing *State v. Brewer, supra.*

In *State v. Cousins*, 208 Neb. 245, 302 N.W.2d 731 (1981), Cousins had been found guilty of escaping while under arrest for a felony. In passing sentence, the trial court stated that " '[t]his sentence then shall be . . . for a period of one year to eighteen months to be served consecutive to the one I sentenced him on this morning . . . and *concurrently* to' " another sentence. (Emphasis in original.) *Id.* at 246, 302 N.W.2d at 732. Approximately 6 minutes later, the trial court ordered the parties to return to the courtroom, whereupon it stated:

> " 'Let the record show I called the parties back and announced I am not changing any sentence but I am correcting a statement from the Bench. I did not mean this would be concurrent to the sentence imposed by [another judge]. . . . I mean this would be consecutive. I did not want to give this defendant the same amount because of a different history, but it is a second offense. I should have said consecutive to the one imposed by [the other judge].' "

*Id.* The State argued that as the use of the word "concurrent" was inadvertent, the trial court should be permitted, under the authority of *Brewer* and *Snider*, to amend its sentence. However, this court held that the trial court's attempt to correct its original pronouncement was ineffective. We again noted that a valid sentence takes effect from the time it is pronounced, and declared that

> to begin questioning whether a valid sentence has been pronounced inadvertently would involve this court in a morass. We would be called upon to read the mind of the sentencing judge in any circumstance in which a valid sentence had been pronounced and later amended due to the judge's proclaimed inadvertence. We think that would

not be the better rule, nor would it be in keeping with the spirit of our previous cases. Therefore, to the extent that *State v. Snider, supra*, might indicate that the mere inadvertence in pronouncing a valid sentence would justify the court in pronouncing another sentence, it is overruled.

*Cousins* at 247, 302 N.W.2d at 733.

We also considered the matter in *State v. Carlson*, 227 Neb. 503, 418 N.W.2d 561 (1988), a case not cited by either party. The trial court in that case said at 505, 418 N.W.2d at 562: " 'As to the burglary charge, Count II . . . I am going to sentence you to a term of four years maximum—four years minimum, twelve years maximum. Both of these counts are to be served concurrently. Or consecutively. Excuse me, consecutively.' " Relying on *Cousins*, Carlson contended that having once pronounced a sentence, the trial court erred in attempting to both impose a different maximum sentence and change a concurrent sentence into a consecutive one. In reviewing the situation, this court considered significant that the trial court had corrected its "inadvertent statement almost immediately" after it had spoken, concluding that it was clear "under the facts of this case, that the [trial court] did not intend to change a sentence or had not finished pronouncing a sentence." *Carlson* at 505, 418 N.W.2d at 562. This court observed that the situation differed from that in *Cousins*, wherein the defendant had left the courtroom after his sentence had been pronounced and was then returned approximately 6 minutes later at the request of the trial court, which declared it had misspoken the original sentence. The *Carlson* court also noted that the defendant in *State v. Snider*, 197 Neb. 317, 248 N.W.2d 342 (1977), had left the courtroom after the sentence had been pronounced and was returned at the request of the trial court, which then changed the sentence as a result of Snider's actions in leaving the courtroom. The *Carlson* court explained further that it had been unable to find any Nebraska cases "even remotely similar" to the facts of the case then under consideration, *id*. at 505, 418 N.W.2d at 562, saying:

In the case at issue here, the time which elapsed between the judge's words in sentencing was practically

nonexistent. The "change" in the sentence is an obvious correction of a misstatement on the part of the judge. It is all part of one sentence, and not a case of imposition of a subsequent sentence. The fact that the judge in this case corrected himself immediately should be indicative of the fact that it was part of the sentence and not the imposition of a subsequent sentence. It is true that *Cousins* does enunciate the rule that a sentence validly imposed takes effect from the time it is pronounced. The question then presents itself as to what constitutes the pronouncement of a sentence, and when does a sentence take effect.

*Id*. at 506, 418 N.W.2d at 563. Although *State v. Cousins*, 208 Neb. 245, 302 N.W.2d 731 (1981), overruled *State v. Snider, supra*, to the extent it "might indicate that the mere inadvertence in pronouncing a valid sentence would justify the court in pronouncing another sentence," *Cousins* at 247, 302 N.W.2d at 733, the *Carlson* opinion distinguished *Cousins*, *Snider*, and *State v. Brewer*, 190 Neb. 667, 212 N.W.2d 90 (1973), by stating that "where a period of minutes or days elapsed between the pronouncement of sentences, some ambiguity might exist," *Carlson* at 506, 418 N.W.2d at 563, in that an appellate court might find different sentences in separate parts of the bill of exceptions.

The *Carlson* opinion recognized that it would be difficult to set a "hard-and-fast rule" on the question of how much time a court should be given within which to correct itself, saying that each case must depend on its particular facts. It concluded, however, that "under the facts of this particular case it should be clear to any reasonable person that the judge, in correcting his language, did not intend to enhance or increase the sentence in any manner." *Id*. at 506, 418 N.W.2d at 563.

The concern in *Cousins*, that "to begin questioning whether a valid sentence has been pronounced inadvertently would involve this court in a morass," was real under those facts. The trial court had adjourned, Cousins had left the courtroom, and time had elapsed before the trial court proclaimed it had inadvertently spoken an otherwise valid sentence. In such an instance, any reason advanced in support of a claim that the otherwise valid sentence was not the sentence intended would

be open to question. Under the facts in *Carlson*, however, this concern could not arise, for the correction was made while Carlson was still in the courtroom, while court was still in original session, and before anyone had an opportunity to make any ex parte statement to the trial court.

Regardless of the time factor, it is obvious that after the error was called to his attention in this case, Judge Hendrix immediately corrected what the erroneous presentence report had led him into saying by pronouncing the sentences he had always intended to impose. This is in part evidenced by his statement at the beginning of the sentencing that close to the maximum sentence must be imposed. Although it is true Judge Hendrix did not notice his mispronouncement until the prosecutor called it to his attention, the prosecutor's comments did nothing more than point out the inapplicability of the pronounced sentences to one of the crimes involved, a matter which should have been apparent to all—the sentence mistakenly imposed for the attempted criminal mischief conviction exceeded the maximum allowed by statute, and was thus erroneous. Under these facts, the *Cousins* concern of having to read a trial court's mind does not exist. The facts make it clear that Judge Hendrix misspoke and did not intend in this case the sentence he first pronounced.

It must also be remembered that to create finality in a criminal case, it is necessary that there be a judgment of conviction, followed by a sentence. See *State v. Kramer*, 231 Neb. 437, 436 N.W.2d 524 (1989), citing *In re Interest of Wolkow*, 206 Neb. 512, 293 N.W.2d 851 (1980). Thus, for the purpose of appeal in a criminal case, it is the sentence which is the judgment. *State v. Spotted Elk*, 227 Neb. 869, 420 N.W.2d 707 (1988). A judgment is rendered when it is both pronounced and some written notation of it is made and filed in the records of the court. See, *State v. Temple*, 230 Neb. 624, 432 N.W.2d 818 (1988); *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216 (1987); *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986); Neb. Rev. Stat. § 25-1301 (Reissue 1989). Foster has failed to establish that the sentence first pronounced by Judge Hendrix in this case was ever "rendered," for there is no showing that any written notation of it was made

in the records of the court.

That a sentence validly imposed takes effect from the time it is pronounced and a subsequent sentence fixing a different term is a nullity does not mean that a judge may never correct an inadvertent mispronouncement of a sentence. The circumstances under which a judge may correct an inadvertent mispronouncement of a sentence are limited to those instances in which it is clear that the defendant has not yet left the courtroom, it is obvious that the judge, in correcting his or her language, did not change in any manner the sentence originally intended, and no written notation of the inadvertently mispronounced sentence was made in the records of the court.

AFFIRMED.