STATE OF NEBRASKA, APPELLEE, V. MARTY A. MCDOWELL, APPELLANT.
522 N.W.2d 738

Filed October 14, 1994.   No. S-93-1112.

Eugene G. Schumacher, of Luckey, Sipple, Hansen, Emerson & Schumacher, for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and SIEVERS, Chief Judge, and BOSLAUGH, J., Retired.

LANPHIER, J.

After a jury trial in the district court for Platte County, the appellant, Marty A. McDowell, was convicted of burglary,

conspiracy to commit burglary, and theft by unlawful taking. After the verdict, the trial court dismissed the conviction for conspiracy to commit burglary, but let the remaining convictions stand. On appeal, McDowell's assignments of error concern only the conviction for burglary. McDowell contends that the evidence adduced against him was insufficient as a matter of law to sustain a conviction for burglary. McDowell claims, in effect, that the prosecutor charged him with the wrong crime. Although he admits he climbed a fence in order to steal transmission casings from Columbus Transmission, he argues that climbing a fence does not constitute breaking, an essential statutory element of burglary. We agree and, therefore, reverse and remand.

## BACKGROUND

During the early morning hours of March 25, 1993, McDowell and Neil Huston were caught stealing transmission casings by Lonny Cattau, one of the owners of Columbus Transmission in Columbus, Nebraska. Cattau woke up around 1 a.m. on March 25 feeling that something was wrong at his transmission shop. He decided to drive down to his shop. As he approached the shop, he noticed a car driving unusually slow past his shop. He followed the car until he saw it go into a trailer court. Cattau then returned to his shop.

After a short while, he saw the car he had followed just north of his parking lot. Cattau observed the driver turn off his headlights and back into a carport located just beyond the chain link fence which constitutes the northern border of the Columbus Transmission storage yard. The storage yard is bordered by the Columbus Transmission building on one side and fence on the other three sides. The storage yard was used to store differentials, transmissions, transmission casings, and other parts.

After the car was parked, Cattau walked out of his shop and over to the carport. When he reached the carport, he saw two individuals, later determined to be McDowell and Huston, loading transmission casings into the backseat of the car located under the carport. Cattau asked McDowell and Huston what they were doing, but received no response. Cattau eventually

took McDowell and Huston back to his office. McDowell told Cattau that he was taking the transmission casings in order to pay off a ticket. McDowell also told Cattau that he jumped the fence to get into the storage yard. Cattau then called law enforcement officers.

At trial, Huston testified that after McDowell parked the car under the carport, McDowell climbed a corrugated steel fence and jumped into the Columbus Transmission storage yard. According to Huston, once inside the yard, McDowell picked up transmission casings and threw them over the fence. Huston then carried the transmission casings into the carport. When a light came on at Columbus Transmission, McDowell and Huston fled in the car. Later, McDowell and Huston drove back to the carport to retrieve the transmission casings. While they were loading the remaining casings, Cattau caught them.

## ASSIGNMENTS OF ERROR

McDowell asserts that the trial court erred (1) in failing to grant his motion to dismiss made at the conclusion of the State's case; (2) in failing to hold that the evidence presented was insufficient to support a conviction for burglary; (3) in failing to give a requested instruction concerning the definition of "to break and enter"; (4) in giving instruction No. 8, defining "to break and enter"; (5) in failing to grant his motion for new trial; and (6) in failing to grant his motion to quash, in which he challenged the constitutionality of Neb. Rev. Stat. § 28-507 (Reissue 1989).

## STANDARD OF REVIEW

In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that reasonably can be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Carter*, 241 Neb. 645, 489 N.W.2d 846 (1992).

## TIMELINESS OF APPEAL

Before addressing the merits of this appeal, we first consider the timeliness of the appeal from the judgment, as there appears to have been an irregularity. Timeliness of an appeal is a

jurisdictional necessity and may be raised by an appellate court sua sponte. See *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994).

With respect to the timeliness of an appeal, Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 1992) provides in pertinent part the following:

> [P]roceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court, including judgments and sentences upon convictions for felonies and misdemeanors, shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final order was rendered, within thirty days after the rendition of such judgment or decree or the making of such final order, a notice of intention to prosecute such appeal . . . .

In order to determine the timeliness of McDowell's appeal from the judgment of the district court, it is necessary to determine the date upon which judgment was rendered. This is necessary because the time for the appeal of a judgment runs from the date the judgment is rendered. *Id.* In a criminal case, the judgment is the sentence. *State v. Spotted Elk*, 227 Neb. 869, 420 N.W.2d 707 (1988); *In re Interest of Wolkow*, 206 Neb. 512, 293 N.W.2d 851 (1980); *State v. Long*, 205 Neb. 252, 286 N.W.2d 772 (1980). The rendition of a judgment is the act of the court, or a judge thereof, in pronouncing judgment, accompanied by the making of a notation on the trial docket, or one made at the direction of the court or judge thereof, of the relief granted or denied in an action. Neb. Rev. Stat. § 25-1301(2) (Reissue 1989). This court has held that the mere oral pronouncement of a judgment without an entry on the trial docket is not the rendition of a judgment or a final order. *Fritch v. Fritch*, 191 Neb. 29, 213 N.W.2d 445 (1973). We have also held that the issuance of a memorandum opinion or order by a judge without the entry of a notation on the trial docket is not the rendition of a judgment. *Valentine Production Credit Assn. v. Spencer Foods, Inc.*, 196 Neb. 119, 241 N.W.2d 541 (1976). However, failing a notation on the trial docket, a judgment is rendered when some written notation of the judgment is filed in

the records of the court. *State v. Foster*, 239 Neb. 598, 476 N.W.2d 923 (1991); *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216 (1987); *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986); *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984).

The record before us does not contain a copy of the trial docket. It is therefore difficult to determine precisely when judgment was rendered. Notwithstanding the absence of the trial docket, the record demonstrates that McDowell's sentencing hearing took place on December 3, 1993. Since the sentencing could not have taken place prior to that date, neither could the judgment have been rendered. We can therefore conclude that the notice of appeal filed on December 17, 1993, only 14 days after the first date that judgment could have been rendered, was not late.

However, from the record before us it appears that the notice of appeal may have been filed too early. The record shows that a "Sentence and Judgement" signed by the presiding judge was filed December 20, 1993, 3 days after McDowell filed his notice of appeal.

In his praecipe for transcript, McDowell requested that the clerk of the district court prepare a transcript to include, among other items, "[a]ny Journal Entry or Sentence and Judgment which may be filed concerning the sentencing hearing of December 3, 1993." Assuming that the clerk properly performed her task, and we have no reason to believe otherwise, nothing else in the records of the trial court could evidence the rendition of judgment.

There being nothing in the record to establish that the judgment of the district court was noted on the trial docket, the judgment was rendered on December 20, 1993, when the "Sentence and Judgement" was filed in the records of the court. See, *State v. Foster, supra*; *Hoffman v. Reinke Mfg. Co., supra*; *Federal Land Bank v. McElhose, supra*; *Schmuecker Bros. Implement v. Sobotka, supra*. Thus, since the judgment was rendered 3 days after the notice of appeal was filed, the notice of appeal was too early.

However, it is an admittedly odd situation in which the judgment has been announced, but in which an appeal

therefrom cannot be had. Nonetheless a like situation has arisen, albeit in a civil matter, in *Dale Electronics, Inc. v. Federal Ins. Co.*, 203 Neb. 133, 277 N.W.2d 572 (1979). There we held that a notice of appeal filed after the trial court announced its decision, but before a judgment has been rendered, is effective to confer jurisdiction on the appellate court if the notice of appeal shows on its face that it relates to the decision which has been announced by the trial court and the record shows that a judgment was subsequently rendered in accordance with the decision which was announced and to which the notice of appeal relates.

We can see no reason why this rule should not apply in a criminal case in which the same criteria has been met: where there has been an announced decision, a notice of appeal showing on its face that it relates to the announced decision, and the subsequent rendering of a judgment in accordance with the announced decision and to which the notice of appeal relates.

Although the record does not contain a verbatim transcript of the sentencing, a commitment to the Nebraska Penal and Correctional Complex, filed December 9, 1993, serves to establish that the district court announced its decision on December 3, 1993. The record before us also contains a notice of appeal which shows on its face that it relates to the announced decision. Additionally, the record shows that judgment was subsequently rendered in accordance with the announced decision to which the notice of appeal related. Thus, as in *Dale Electronics, Inc.*, the premature notice of appeal was continuing in nature and became effective upon the rendition of judgment. We therefore have jurisdiction over this matter and may proceed to address this appeal on its merits.

## CONSTITUTIONALITY

We turn first to McDowell's assertion that § 28-507 is unconstitutionally vague, for if it is, we need not reach McDowell's other assigned errors.

Neb. Ct. R. of Prac. 9E (rev. 1992) requires that "[a] party presenting a case involving the federal or state constitutionality of a statute must file and serve a separate written notice thereof

with the Supreme Court Clerk at the time of filing such party's brief." McDowell acknowledges that he failed to file and serve a separate written notice of his constitutional challenge with the Supreme Court Clerk at the time he filed his brief. He did, however, file the required notice at the time he submitted his reply brief. Nonetheless, since McDowell failed to strictly comply with rule 9E, we will not consider his constitutional challenge to § 28-507. See, *Abdullah v. Gunter*, 242 Neb. 854, 497 N.W.2d 12 (1993); *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992); *Givens v. Anchor Packing*, 237 Neb. 565, 466 N.W.2d 771 (1991); *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990).

## SUFFICIENCY OF THE EVIDENCE

We next address whether the evidence adduced at trial was sufficient to sustain a conviction for burglary, or whether McDowell's motion to dismiss at the close of the State's case should have been sustained. The substance of McDowell's motion to dismiss was that the State failed to prove an element of burglary, a "breaking."

It is fundamental that the State must prove beyond a reasonable doubt each and every element of the crime charged. *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991). See, also, *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The elements of burglary are contained in § 28-507: "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." See, also, *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991); *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990). It is well settled that a breaking is an essential element of burglary. *State v. Crispell*, 201 Neb. 759, 272 N.W.2d 51 (1978); *McGrath v. State*, 25 Neb. 780, 41 N.W. 780 (1889).

On appeal, as in his motion, McDowell contends that the uncontroverted evidence of record is that he climbed a fence to gain entry to the Columbus Transmission storage yard and that climbing a fence is not a breaking. Our review of the record confirms that the only evidence presented was that McDowell

gained entry to Columbus Transmissions' storage yard by climbing a fence. Thus, we must address the question of whether or not climbing or jumping a fence constitutes a "breaking" within the definition of the burglary statute.

We have repeatedly held that evidence of any act of physical force, however slight, by which the obstruction to entering is removed is sufficient to prove a breaking. *State v. Tyrrell, supra*; *State v. Zemunski*, 230 Neb. 613, 433 N.W.2d 170 (1988); *State v. Sutton*, 220 Neb. 128, 368 N.W.2d 492 (1985); *State v. Classen*, 216 Neb. 323, 343 N.W.2d 749 (1984); *State v. Campbell*, 190 Neb. 394, 208 N.W.2d 670 (1973); *Ferguson v. State*, 52 Neb. 432, 72 N.W. 590 (1897); *Metz v. State*, 46 Neb. 547, 65 N.W. 190 (1895). For instance, the opening of a closed door is a breaking. See, *State v. Tyrrell, supra*; *State v. Jones*, 230 Neb. 968, 434 N.W.2d 333 (1989); *State v. Sutton, supra*; *State v. Classen, supra*; *State v. Campbell, supra*; *State v. Sedlacek*, 178 Neb. 322, 133 N.W.2d 380 (1965); *Ferguson v. State, supra*. However, walking through an open door is not. *Hayward v. State*, 97 Neb. 9, 149 N.W. 105 (1914). Opening a skylight is also a breaking, *State v. Zemunski, supra*, yet crawling over a closed door and through an open transom is not, *McGrath v. State, supra*. An analysis of our case law clearly demonstrates that force alone is not enough to constitute a breaking. It takes physical force to walk through an open door or to crawl through an open window, but no obstruction is removed; thus, there is no breaking. Although it undoubtedly took McDowell some measure of force to climb or jump the fence in the instant case, no obstruction was removed. McDowell merely entered through the open space above the fence. Thus, as a matter of law there was no breaking, and therefore no burglary. McDowell's motion to dismiss should have been sustained with respect to the charge of burglary. McDowell's conviction for burglary is therefore, reversed.

## JURY INSTRUCTIONS

Although we need not reach McDowell's assigned errors concerning the jury instructions on burglary, since we reversed McDowell's conviction, we note that the trial court did not instruct the jury that breaking requires an obstruction to

entering to have been removed. As discussed above, it is the law of Nebraska that breaking requires both the use of physical force, however slight, and the removal of an obstruction to entering. Also, it is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case is prejudicially erroneous. *State v. Grimes, ante* p. 473, 519 N.W.2d 507 (1994). When burglary is charged, a jury should be instructed that in addition to the use of physical force, however slight, the removal of an obstacle to entry is necessary to find a breaking.

## CONCLUSION

Climbing or jumping a fence does not constitute breaking under the definition of the burglary statute, and we therefore reverse McDowell's conviction for burglary. The remaining conviction is not addressed.

REVERSED AND REMANDED.