IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. ALSTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DARIUS L. ALSTON, APPELLANT.

Filed June 30, 2020.    No. A-20-068.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Cindy A. Tate, and Lori A. Hoetger for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Darius L. Alston appeals his plea-based convictions for two convictions of sex trafficking. On appeal, he contends that the district court lacked jurisdiction to resentence him resulting in the imposition of illegal and unauthorized sentences, that his original sentences were illegal, and that the sentences imposed upon resentencing were excessive. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

The State originally charged Alston with labor or sex trafficking of a minor, a Class IB felony, and terroristic threats, a Class IIIA felony. Pursuant to a plea agreement, Alston pled no contest to an amended information charging him with two counts of labor or sex trafficking, both Class II felonies. See Neb. Rev. Stat. § 28-831(2) (Cum. Supp. 2018). Also as part of the plea

- 1 -

agreement the State agreed to dismiss charges in three separate cases relating to violation of probation and drug offenses.

The State provided a factual basis which set forth that on or about February 10 through March 7, 2019, police stopped Alston's vehicle to take Alston into custody on an unrelated warrant. At the time of the stop, there were two women in Alston's vehicle. Subsequent to Alston's arrest, victim 1 told officers that she met Alston and victim 2 (who was also charged as a codefendant) through a mutual acquaintance, that both Alston and victim 2 actively recruited her in a sex for money trade, and that both began to threaten to kill not only her but also her family if she did not engage in sexual acts with men in exchange for money. During multiple interviews with law enforcement, victim 1 told officers that at Alston's direction, she was taken to room 213 at a hotel, where she had sex with approximately six men in exchange for money. According to victim 1, some of those men held a gun to her and some of them physically beat her. Victim 1 told officers that she was subjected to penile/vaginal sex and oral sex approximately six times and her payments ranged from $75 to $200, all of which she had to turn over to Alston or victim 2. Victim 1 told officers multiple times that she was threatened and, because she cared about her family, she believed that she had no choice but to engage in these sexual acts even though she did not want to.

Victim 2 told law enforcement that she actively participated in recruiting and worked with Alston in forcing victim 1 to engage in sex for money and that the money victim 1 earned was turned over to Alston. Victim 2 told officers that she was also forced to engage in penile/vaginal sex and oral sex with various men throughout Omaha, Nebraska, as well as other jurisdictions, in exchange for money. Victim 2 also stated that Alston threatened her with violence and that both she and victim 1 were in imminent fear for their safety.

At the January 10, 2020, sentencing hearing, the court stated:

> Mr. Alston, the Court has read through the Presentence Investigation report, and it took less than ten seconds to understand that this is not a probation case. The part of this I can't put together is you say that you were in the good hands of so many women in your life, and you have four daughters of your own, but yet, you turn around and do this to these girls?
>
> And, Mr. Alston, I am taking into account that you do, despite what you are convicted of, that you also do have family, and I'll take you at your words as being sincere.

The district court sentenced Alston to 40 to 60 years' imprisonment on each count with credit for 330 days previously served. The court ordered the sentences to run concurrently and advised Alston to register under the Nebraska Sex Offender Registration Act (SORA) for 25 years.

On January 16, 2020, at a hearing attended by the prosecutor and defense counsel, the court informed the parties that the court's previously imposed sentences of 40 to 60 years' imprisonment exceeded statutory maximum for Class II felonies of 50 years' imprisonment. The court noted that because the sentences imposed exceeded the court's authority, the sentences were void and Alston stood without a sentence. The district court entered an order voiding its January 10 sentencing order. That same day the court resentenced Alston to 40 to 50 years' imprisonment on each count with credit for 336 days previously served. The court ordered Alston's sentences to run

concurrently. Alston has timely appealed to this court and is represented by the same counsel that represented him during his plea and sentencing.

## ASSIGNMENTS OF ERROR

On appeal, Alston contends that (1) the district court lacked jurisdiction to resentence him, resulting in the imposition of illegal and unauthorized sentences; (2) his original sentences were illegal; and (3) the sentences imposed upon resentencing were excessive.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

## ANALYSIS

### JURISDICTION TO RESENTENCE ALSTON

Alston's first assignment of error is that the district court lacked jurisdiction to resentence him. He claims that the district court lost jurisdiction to resentence him after the court filed its written sentencing order and that "the proper remedy is to allow an appellate court to remand for resentencing." Brief for appellant at 16.

The power to define criminal conduct and fix its punishment is vested in the legislative branch, whereas the imposition of a sentence within these legislative limits is a judicial function. *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016). A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime. *Id*.

The Nebraska Supreme Court considered a factual situation nearly identical to that presented in the instant case in *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999). After initially sentencing Lotter in excess of the limits prescribed by law, the district court resentenced Lotter. Lotter claimed, *inter alia*, that the district court did not have jurisdiction to modify his sentences. In rejecting Lotter's claims, the Nebraska Supreme Court held:

"[W]hen a *valid sentence* has been put into execution the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. Any attempt to do so is of no effect and the original sentence remains in force." (Emphasis supplied.) *State v. Brewer*, 190 Neb. 667, 676-77, 212 N.W.2d 90, 95 (1973). See, also, *State v. Christiansen*, 217 Neb. 740, 351 N.W.2d 67 (1984). However, the sentences imposed in the instant case on February 21 were not "valid sentences." Rather, they were invalid in that the maximum period of incarceration specified exceeded that which is authorized by statute. See Neb. Rev. Stat. § 28-105 (Reissue 1995). When a sentence imposed is unauthorized under law, it is void, and a void sentence is no sentence. *State v. Wilcox*, 239 Neb. 882, 479 N.W.2d 134 (1992). In other words, the trial court did not impose any sentences in the instant case until February 29. See *State v. Gaston*, 191 Neb. 121, 214 N.W.2d 376 (1974) (distinguishing *State v. Brewer, supra*).

*State v. Lotter*, 255 Neb. at 518-19, 586 N.W.2d at 633. See, Neb. Rev. Stat. § 25-1912(4) (Cum. Supp. 2018); *State v. Schmailzl*, 248 Neb. 314, 534 N.W.2d 743 (1995) (appellate court obtains jurisdiction over appeal when notice of appeal and docket fee have been deposited in office of clerk of district court).

Here, the district court initially sentenced Alston to 40 to 60 years' imprisonment for each of the Class II felonies to which he had pled no contest. These sentences exceeded the permissible statutory penalty for Class II felonies and, as such, the initial sentences were invalid and void. After acknowledging its error, the district court proceeded to resentence Alston prior to Alston filing a notice of appeal and poverty affidavit. Here, the district court's original sentences were invalid and void, and pursuant to the Nebraska Supreme Court's holding in *State v. Lotter, supra*, the district court retained jurisdiction over Alston at the time of the resentencing. Accordingly, Alston's claim to the contrary fails.

ORIGINAL SENTENCES

Alston's second assignment of error is that his original sentences were illegal. This argument is predicated on his argument that the district court's original sentence, although invalid, remained in effect. Having determined in the previous section of the opinion, that Alston's original sentences were void due to their invalidity and that the district court retained jurisdiction to resentence Alston, this assigned error likewise fails.

EXCESSIVE SENTENCE

Alston's third assignment of error is that the sentences imposed during his resentencing were excessive.

Alston pled no contest to two Class II felonies which are punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). The sentence imposed upon resentencing of 40 to 50 years' imprisonment are within the statutory sentencing range. Additionally, Alston received a substantial benefit from his plea agreement in which a Class IB felony, punishable by 20 years' to life imprisonment, was amended to a Class II felony. *Id*. As part of the plea agreement, the State also agreed to dismiss charges in three separate cases relating to violation of probation and drug offenses.

At the time the presentence investigation report (PSR) was prepared, Alston was 29 years old, married, and was the father of nine minor children. Alston's criminal history included one conviction each for violating a traffic signal, failing to carry an operator's license, burglary, possession of marijuana (less than 1 ounce), false information, criminal impersonation, trespassing, violation of a protection order, shoplifting, false reporting, assault and battery, third degree domestic violence, obstruction, terroristic threats, driving under the influence (greater than .15); nine convictions for operating during suspension; and two convictions each for failure to appear and leaving the scene of a property damage accident. Additionally, Alston had a criminal impersonation charge pending and had a warrant for failure to appear on that charge. Alston also indicated to the probation officer that during his incarceration, he had been in trouble for failure to comply and for fighting. The level of service/case management inventory assessed Alston as a very high risk to reoffend. Further, Alston's combined scores on the Vermont Assessment of Sex

Offender Risk II and the Sex Offender Treatment Intervention and Progress Scale indicated that he is a high risk to reoffend.

Alston's statement to the probation officer set forth: "My lawyer told me not to talk. This case has been a lesson for me. I [cannot] be open about it, but I want to be. This has all impacted me, but it's not like it looks. I made a dumb decision after being locked up." The probation officer then asked Alston why he pled no contest to the charges if he was not guilty of them, to which Alston responded: "They wanted to go to trial. They offered a deal for no deposition. This deal killed all the other felonies and there wouldn't be a mandatory prison term. I'm eligible for probation, not 20 to life. I just want to make sure that they understand I took a plea for the betterment of it all." The probation officer noted that "[Alston's] behavior leading to his arrest is concerning and shows an extreme disrespect or disregard for women in gene[r]al, including minor females." The summary of the PSR also included the following observation by the probation officer:

> As this Court is aware, Mr. Alston is before this Court for his part in a human trafficking case. Mr. Alston has had potentially several victims, at least two of them are involved with this particular case. Mr. Alston takes very [m]inimal responsibility for his actions, and in fact, stated that it blows his mind his co-defendant is considered a victim. Mr. Alston allegedly "pimped out" minors for his own benefit for a period of time, arranging sex-acts for these victims with males who were willing to pay money. One of the victims even detailed an act of violence against her where a gun was pulled on her when she asked for her cash. Mr. Alston arranged these sexual acts with nothing but his own selfish gain in mind, not even considering the impact it could have had on [anyone] else involved.

Based upon the factors that the resentencing of Alston resulted in sentences that were within the statutory sentencing range, the substantial benefit he received from the plea agreement, his criminal history, the seriousness of the offenses, his refusal to take responsibility for the offenses, and his high risk to reoffend, the district court did not abuse its discretion in imposing the sentences on Alston.

Finally, we note that in its initial sentencing of Alston, the district court stated that it was requiring Alston to register as a sex offender under SORA. In its resentencing, the district court did not advise Alston regarding registration requirements under SORA. The labor and sex trafficking statute set forth at § 28-831 is not one of the listed convictions triggering the registration requirements under SORA. See Neb. Rev. Stat. § 29-4003 (Supp. 2019). Thus, as the statute is currently written, a convicted sex trafficker is not subject to the reporting requirements of SORA. A statute is not to be read as if open to construction as a matter of course. *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Id*. In the absence of ambiguity, courts must give effect to statutes as they are written. *Id*. It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019).

## CONCLUSION

Having considered and rejected Alston's assigned errors, we affirm his convictions and sentences.

AFFIRMED.